**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DENNIS BROWN,

                Plaintiff,

        v.                                    No. 15-CV-1458 (BKS/CFH)

SGT. SMITHEM; et al.,

                Defendant.

---

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| DENNIS BROWN<br>Plaintiff pro se<br>96-A-3118<br>Riverview Correctional Facility<br>P.O. Box 247<br>Ogdensburg, New York 13669 | |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General for the<br>   State of New York<br>The Capitol<br>Albany, New York 12224<br>Attorney for Defendants | DENISE P. BUCKLEY, ESQ.<br>Assistant Attorney General |

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Dennis Brown ("Brown"), an inmate who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

defendants Sergeant ("Sgt.") Smithem, Correction Officer ("C.O.") J. Coburn, C.O. Clearwater, C.O. Dequarto, C.O. Friedman, C.O. Travis, C.O. Hetcher, C.O. Meinecke, and John Does violated his rights under the First and Eighth Amendments.[2] See Dkt. No. 1 ("Compl.").[3] At all relevant times, Brown was incarcerated at Five Points Correctional Facility ("Five Points C.F."). Presently pending is defendants' motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) to dismiss the complaint on the ground that Brown's complaint is barred by the statute of limitations. Dkt. No. 34. Brown filed a response. Dkt. No. 45. Defendants did not file a reply. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

### A. February 7, 2012 Grievance

Beginning in January 2012, Coburn and Friedman harassed Brown by pat-frisking him in an aggressive manner on a daily basis. Compl. ¶ 11. Brown submitted a grievance against Coburn and Friedman on February 7, 2012. Id. ¶ 10. A couple days after Brown submitted this grievance, Coburn brought the grievance to Brown's cell and told him that he will have his friends assault Brown if Brown continues to submit grievances against him and Friedman. Id. Coburn then tore up the grievance and left. Id.

---

[2] Multiple claims against other DOCCS officials were dismissed by District Judge Brenda K. Sannes upon initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). See Dkt. No. 11.

[3] The complaint filed by Brown is missing a page and has pages out of order. See Compl. After the Court directed Brown to file a complaint that complies with the Court's Local Rules, Brown filed a supplement to his complaint on March 2, 2016. Dkt. No. 10. The supplement was added to Brown's complaint. See Dkt. No. 1-4.

### B. March 2012 Request to Move to a Different Housing Unit

On March 3, 2012, Brown spoke to non-party C.O. Jemel and requested to be moved to a different housing unit because of constant harassment from Friedman. Compl. ¶ 13. C.O. Jemel sent Brown to speak with non-party Sgt. Mickish. Id. Brown told Sgt. Mickish that he was being harassed, retaliated against, and that Coburn and Friedman, along with other unidentified officers, were tampering with his grievances and complaints. Id. Brown was moved to a different housing unit several days later. Id. ¶ 14. In his new housing unit, Brown continued to see Coburn and Friedman, who harassed and threatened him because of complaints he had written to the Deputy Superintendent of Security and the Superintendent. Id. Coburn and Friedman still subjected Brown to daily aggressive pat-frisks. Id. Brown further claims that his cell was searched constantly and he would find his property damaged. Id.

### C. September 2012 Cell Searches

Friedman searched Brown's cell on September 6 and September 8, 2012. Compl. ¶ 15. After one search, Brown found that his hot pot and some food items were "destroyed." Id. Friedman refused to give Brown a cell search slip. Id.

### D. October 2012 Cell Searches

On October 16, 2012, Friedman searched Brown's cell, destroyed his property, and threatened to have officers assault him because he was still "complaining to the administration about her and Coburn." Compl. ¶ 16. On October 25, 2012, Friedman

searched Brown's cell and destroyed two sneakers. Id. ¶ 17. When Brown asked why Friedman had destroyed his sneakers, she threatened to "cut" him. Id.

### E. October 28, 2012 Excessive Force Incident

On October 28, 2012, Smithem arrived at Brown's cell and told him that he was being moved to the Special Housing Unit ("SHU"). Compl. ¶ 18. Brown inquired as to why he was being taken to the SHU, and Smithem told him that it was because he harassed Friedman and Coburn, and complained about pat frisks. Id. Brown requested that Smithem "get the video camera" before moving him. Id. Smithem refused. Id. Smithem, Clearwater, and Dequato then escorted Brown down the south hall corridor. Id. When they reached the laundry room area, Coburn appeared and slammed Brown's head against the wall. Id. Brown fell to the floor and Coburn, along with the other officers, kicked him and stomped his face. Id. Coburn pulled Brown's legs back, sat on him, and punched his head. Id. Before Brown passed out, Smithem told him that the beating was "what [he] gets for writing [] officers up." Id. Brown later woke up in the clinic and was examined by a nurse. Id.

After Brown was taken to the SHU, he wrote grievances and complaints against Smithem and the other correction officers who assaulted him. Compl. ¶ 19. Brown delivered the grievances, along with complaints addressed to the "superintendent" and "commissioner", to a SHU officer on November 3, 2012. Id. The next day, November 4, 2012, defendants Travis, Hetcher, and Meinecke entered Brown's cell, searched it, and confiscated Brown's legal documents and a pen. Id. ¶ 20. When Brown inquired as to the officers' actions that day, Travis showed Brown that he possessed the grievance that Brown attempted to file the previous day. Id. Travis told Brown that he would kill him "in the box" if

-4-

he ever attempted to file another grievance or complaint against an officer. Id. Travis left with the complaints and grievances, and Brown asserts the "grievances were never processed." Id.

Brown received a pen from an unidentified officer on November 5, 2012. Compl. ¶ 23. The next day, unidentified officers entered Brown's cell and took the pen from him, stating that they were taking the pen because he writes up officers. Id. A couple days later, Brown received another pen but it did not work. Id. When Brown told an unidentified officer that the pen did not work, the officer told him to write with his blood. Id. Due to not receiving a functioning pen, Brown asserts that he was unable to file appeals or communicate with the courts or his family. Id.

### F. November 2012 False Misbehavior Report

In November 2012, Friedman issued Brown a false misbehavior report in retaliation for the complaints he had filed against her. Compl. ¶ 21. At the hearing on the misbehavior report, Brown told the hearing officer, non-party Wendland, that Friedman had issued a false misbehavior report. Id. Wendland found Brown guilty and sentenced him to six months in the SHU. Id. ¶ 22.

## II. Discussion[4]

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(c)

---

[4] All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

Motions for dismissal under Fed. R. Civ. P. 12(c) are evaluated under the same standard as motions to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P 12(b)(6). Rubeor v. Town of Wright, 191 F. Supp. 3d 198, 202-03 (N.D.N.Y. 2016) (citing Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)). Thus, in considering defendants' motion to dismiss plaintiff's complaint, the Court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally." (internal citations omitted)).

### B. Statute of Limitations

Defendants assert that Brown's surviving claims are barred by the applicable statute of limitations. Dkt. No. 34-1 at 4-7. Brown argues that he filed his complaint within the statute of limitations period because the claims he asserted were continuing violations which did not accrue until the last discriminatory act ended. Dkt. No. 45 at 4.

While there is no statute of limitations provision in § 1983, 42 U.S.C. § 1988 provides that state law may apply if it is not inconsistent with the Constitution or federal law. 42 U.S.C. § 1988(a); Moor v. Cnty. of Alameda, 411 U.S. 693, 702–03 (1973). In New York, the applicable statute of limitations for a § 1983 suit is three years, derived from the general

or residual personal injury laws of the forum state.  See N.Y. C.P.L.R. § 214(5); Owens v. Okure, 488 U.S. 235, 249–50 (1989); Romer v. Leary, 425 F.2d 186, 187 (2d Cir.1970); Lugo v. Senkowski, 114 F. Supp. 2d 111, 113 (N.D.N.Y.2000) (applying Owens in establishing a three-year statute of limitation for § 1983 claims).  Thus, Brown's Eighth Amendment excessive force and First Amendment retaliation claims are subject to New York's three-year statute of limitations.

Federal law governs the determination of the accrual date for purposes of a § 1983 claim.  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).  The claim accrues "when the plaintiff knows or has reason to know" of the harm.  Id. (citations and internal quotation marks omitted).  "The crucial time for accrual purposes is when the plaintiff becomes aware that he [or she] is suffering from a wrong for which damages may be recovered in a civil action."  Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980).  Additionally, "a pro se prisoner's § 1983 complaint is deemed filed, for statute of limitations purposes, when it is delivered to prison officials."  Tapia–Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999) (citing Houston v. Lack, 487 U.S. 266, 270 (1988); Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993)).

### 1. Date of Filing of the Complaint

In the Court's initial review of Brown's complaint pursuant to 28 U.S.C. § 1915(e), the Court determined, under the "prison mailbox rule", that Brown had filed his complaint on October 16, 2015—the date that he signed the complaint.  Dkt. No. 11 at 4 n.5.  Under the "prison mailbox rule," the date of filing is the date that an inmate delivers his or her complaint to a prison guard for mailing.  Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).  That

date of delivery is presumed to be the date that the inmate signs his or her complaint. Johnson v. Connolly, No. 9:07-CV-0158 (LEK/GHL), 2008 WL 724167, at *7 (N.D.N.Y. Mar. 17, 2008).

Defendants argue that plaintiff wrote, in his cover letter addressed to the Court dated December 4, 2015, that he was "sorry" for submitting his complaint late. See Dkt. No. 34-1 at 5; Dkt. No. 1-2. Additionally, the envelope containing the cover letter and complaint bears the date of December 7, 2015. Dkt. No. 1-3. Thus, defendants argue that the date of filing for the purpose of the Court's analysis should be December 4, 2015—the date that Brown signed the cover letter. Dkt. No. 34-1 at 5. The Court agrees.

The presumption that the day that Brown signed his complaint is the date that the complaint was delivered to a prison official for mailing need not apply here because Brown readily admits in his response to defendants' motion that he did not send his complaint to the Court until December 4, 2015. See Dkt. No. 45 at 10. Brown explains that he failed to append the proper amount of postage when he attempted to mail his complaint on October 16, 2015. Id. at 9-10. Thus, the package containing his complaint was returned to him sometime between November 19, 2015 and November 27, 2015.[5] Id. at 9-10. Brown asked his "legal assistant" to type a new cover letter and sent the package—with the correct postage appended—on December 4, 2015. Id. at 10. Thus, the Court finds that December 4, 2015 is the correct date of filing.

## 2. Continuing Violation Doctrine

---

[5] Brown is not sure exactly which date the package was returned to his cell because he was hospitalized during this time. Dkt. No. 45 at 10.

The continuing violation doctrine delays the accrual date for a claim challenging a discriminatory policy "'until the last discriminatory act in furtherance of [the discriminatory policy].'" Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)) (additional citation omitted). Thus, "the continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" Id. (quoting Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999)).

### a. First Amendment Retaliation Claims

Brown asserts First Amendment retaliation claims against Friedman, Coburn, Clearwater, Dequarto, Smithem, Travis, Hetcher, Meinecke, and John Doe. See Compl. ¶¶ 10-11, 14-18, 20-21, 23. According to the dates of the retaliatory acts alleged in Brown's complaint, the accrual dates for these claims are as follows: February 2012; March 2012; September 6 and 8, 2012; October 16, 25, and 28, 2012; and November 4 and 6, 2012. See id.

The Second Circuit has held that "[t]he mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one." Gonzalez v. Hasty, 802 F.3d 212, 222 (2d Cir. 2015) (citation omitted). "First Amendment retaliation claims typically accrue at the time that the allegedly wrongful conduct occurred." Albritton v. Morris, No. 13-CV-3708 (KMK), 2016 WL 1267799, at *10 (S.D.N.Y. Mar. 30, 2016) (citing Smith v. Campbell, 782 F.3d 93, 101 (2d Cir. 2015)) (additional citation omitted). Therefore, the statute of limitations "begins to run when the defendant has 'engaged in enough activity to make out an actionable claim.'" Gonzalez, 802 F.3d at 22 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002)). In contrast, the continuing violation doctrine

-10-

only applies "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." Id. (citing Morgan, 536 U.S. at 114-15). The continuing violation doctrine does not apply to "discrete unlawful acts." Albritton, 2016 WL 1267799, at *10 (quoting Gonzalez, 802 F.3d at 220).

Here, Brown's First Amendment retaliation claims all concern discreet acts. On February 7, 2012, Brown claims Coburn threatened him after he filed a grievance complaining of harassment and excessive pat frisks. Compl. ¶ 10. Brown further claims that the harassment and aggressive pat frisks perpetrated by Coburn, Friedman, and John Does started in January 2012 and "continued daily." Id. ¶ 11. On September 6 and 8, 2012, and October 16 and 25, 2012, Friedman performed retaliatory cell searches. Id. ¶ 15-16. On October 28, 2012, Coburn, Clearwater, Dequarto, and Smithem assaulted Brown in retaliation for his filing grievances. Id. ¶ 18. On November 3 and 4, 2012, Travis, Hetcher, Meinecke, and John Doe took Brown's pens and interfered with his ability to file grievances in retaliation for Brown's filing grievances. Id. ¶¶ 19-20. On November 4, 2012, Friedman issued Brown a false misbehavior report. Id. ¶ 21.

Here, Brown has not pled facts sufficient to show that he was suffering from an ongoing wrong. To show a continuing violation, Brown "must 'allege both the existence of an ongoing policy . . . and some non-time-barred acts taken in the furtherance of that policy.'" Shomo, 579 F.3d at 182 (quoting Harris, 186 F.3d at 250)). All of the discrete acts allegedly committed by defendants are time-barred, and to the extent that Brown vaguely asserts continuing harassment, such claims are insufficient to state a claim of a continuing violation of his rights. See Albritton, 2016 WL 1267799, at *11 (finding no indication of an ongoing wrong where the plaintiff complained of discrete acts including writing "false

ticket[s]", threats, and other acts of harassment). Although Brown asserts that he suffered from continuing harassment, such an allegation does not transform the discrete acts already alleged in his complaint into a continuing violation, as the statute of limitations for those discrete acts accrued on the date that "all of the elements necessary to state the claim are present." Smith v. Campbell, 782 F.3d 93, 101 (2d Cir. 2015). Thus, the Court finds that Brown's First Amendment retaliation claims accrued on the dates alleged in Brown's complaint,[6] and are time-barred.

### b. Eighth Amendment Excessive Force

To the extent that Brown alleges a continuing violation based on his claim that Coburn, Clearwater, Dequarto, and Smithem used excessive force against him, such a claim also fails to establish a continuing violation of his rights. See Compl. ¶ 18. The alleged use of excessive force on October 28, 2012 is best described as a "discrete, separate act[]" that accrued on that date. MacFarlane v. Ewald, No. 10-CV-2877 (JFB)(ARL), 2016 WL 4076585, at *3 (E.D.N.Y. Aug. 1, 2016) (finding that the plaintiff's allegations of two separate excessive force incidents were discrete acts and not sufficient to establish a continuing violation). Thus, the Court finds that Brown's Eight Amendment excessive force claim accrued on October 28, 2012, and is time-barred by the statute of limitations.

### C. Equitable Tolling

---

[6] The accrual dates are as follows: February 2012; March 2012; September 6 and 8, 2012; October 16, 25, and 28, 2012; and November 4 and 6, 2012. Compl. ¶¶ 10-11, 14-18, 20-21, 23.

Equitable tolling of the statute of limitations is applicable in certain situations where the Court determines that a plaintiff should, in fairness, be excused from his or her lateness in filing a complaint. Gonzalez, 651 F.3d at 322. "'Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.'" Id. (quoting Veltri v. Bldg. Serv. 32B–J Pension Fund, 393 F.3d 318, 322 (2d Cir.2004)).

Here, defendants argue that equitable tolling does not apply because Brown never filed a grievance, and therefore never triggered the tolling of the applicable statute of limitations. Dkt. No. 34-1 at 6-7. Brown has raised multiple reasons that he claims entitle him to equitable tolling of the statute of limitations. See Dkt. No. 45 at 6-11. First, Brown points to the fact that he had knee replacement surgery on March 26, 2013, which required a one-month hospitalization. Id. at 6-7. Then, he was sent to the SHU at Upstate Correctional Facility. Id. at 7. Following this period of incarceration, Brown spent another month in the infirmary following complications from his knee surgery. Id. On July 5, 2013, Brown was transferred to Five Points C.F., where he claims to have been harassed. Id. After arriving at Five Points C.F., he discovered that his legal and medical papers were missing or damaged. Id. He continued to suffer from numerous ailments caused by defendants that required visits to the infirmary and outside hospitals. Id. at 8. Brown claims that he was only able to work on his federal complaint when he met another inmate who agreed to help him prepare his papers in October 2014. Id. Brown then underwent a second surgery on September 23, 2015 and was kept in the hospital until mid-October. Id. at 8-9. Brown finally mailed his complaint on October 16, 2015, but the package was returned due to insufficient postage. Id. at 9-10. Thus, Brown did not file his complaint until

the date he mailed it with the correct postage on December 4, 2015.  Id. at 10.  Based on these hardships allegedly suffered by Brown, he claims that the statute of limitations should be tolled.  Id. at 10-11.

### 1. Exhaustion of Administrative Remedies

Concerning federal complaints that fall under the Prison Litigation Reform Act, the Second Circuit has held that the applicable statute of limitations is tolled while an inmate is exhausting administrative remedies.[7]  Gonzalez, 651 F.3d at 323.  An inmate incarcerated at a New York State correctional facility exhausts administrative remedies utilizing the three-step process promulgated by DOCCS regulations.[8]  Abney v. McGinnis, 380 F.3d 663, 668-69 (2d Cir. 2004).  The applicable statute of limitations is tolled during the time that an inmate is "'actively exhausting' his administrative remedies."  Melendez v. Greiner, 477 F. App'x 801, 803 (2d Cir. 2012) (quoting Gonzalez, 651 F.3d at 322 n.2).

---

[7] The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006).  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

[8] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged action.  Id. at N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue.  Id. at § 701.5(b)(1).  If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

-14-

Brown does not argue in his response to defendants' motion that the statute of limitations should be tolled while he pursued administrative remedies. However, in the days following the February 7, 2012 incident with Friedman, Coburn, and John Does, and the October 28, 2012 assault, Brown claims that defendants intercepted and destroyed his grievances. Compl. ¶¶ 10, 20. He claims that he wrote to Five Points C.F. supervisors regarding Coburn's destruction of the grievance he wrote on February 7, 2012. Id. ¶ 12. He also claims that, during his disciplinary hearing in November 2012, he complained to the hearing officer regarding defendants and other officers taking his grievances and writing materials. Id. ¶ 22. Nevertheless, Brown's response to defendants' motion argues that the statute of limitations should be equitably tolled because of the myriad health issues that he experienced during his incarceration. Dkt. No. 45 at 5-12.

The plaintiff bears the burden of showing that he or she is entitled to equitable tolling. See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007). Therefore, Brown must show that he "was actively exhausting" his administrative remedies during the period in question, otherwise "his burden will go unmet." Davis v. Jackson, No. 15-CV-5359 (KMK), 2016 WL 5720811, at *8 (S.D.N.Y. Sept. 30, 2016) (citation omitted). Further, Brown must show that he brought this action "within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim have ceased to be operational." Abbas, 480 F.3d at 642 (internal quotation marks and citation omitted).

Here, Brown has not addressed defendants' argument that equitable tolling does not apply because Brown never raised an administrative claim. See Dkt. No. 34-1 at 7. Indeed, under the Second Circuit's rule, "the equitable tolling period begins when a plaintiff first raises his administrative claim, and ends when the plaintiff's administrative remedies are

deemed exhausted." Povoski v. Lacy, No. 9:14-CV-97 (BKS/CFH), 2016 WL 908899, at *4 (N.D.N.Y. Feb. 8, 2016) (citing Gonzalez, 651 F.3d at 324)).

Brown admits that he failed to exhaust his administrative remedies, but argues that he was threatened with bodily harm, and that his writing materials were confiscated, preventing him from filing grievances. Dkt. No. 1-4 at 3. Although "reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling[,] . . . every inmate is [not] entitled to equitable tolling merely because he resides in an environment that intrinsically works to his disadvantage." Davis, 2016 WL 5720811, at *11. Brown alleges in his complaint that, on two separate occasions, correction officers intercepted and destroyed his grievances. Compl. ¶¶ 10, 20. However, Brown was able to file a grievance without difficulty in July 2013, after Five Points C.F. allegedly lost his legal and medical papers. Dkt. No. 45 at 7. Additionally, in his response to defendants' motion, Brown claims that he was unable to file his complaint timely because he was suffering from multiple medical issues. See id. at 6-11. He makes no mention of any difficulties filing grievances. Additionally, when Brown did attempt to file his complaint, it was returned to him due to inadequate postage. Id. at 9-10. Brown made no allegation that the complaint was filed late due to interference from prison officials, or fear of retaliation.

Based on the foregoing, the Court finds that Brown has failed to meet his burden in showing that he is entitled to equitable tolling during the time he pursued administrative remedies.

### 2. Brown's Medical Condition

The Second Circuit has held that "equitable tolling may be appropriate where the

plaintiff's failure to comply with the statute of limitations is attributable to the plaintiff's medical condition." Brown v. Parkchester S. Condos., 287 F.3d 58, 60 (2d Cir. 2000). However, a plaintiff's medical condition must be so severe as to affect the plaintiff's cognitive functioning and ability to communicate, so much so that they are rendered unable to pursue their legal rights. See id. at 61 (allowing an evidentiary hearing to determine whether the plaintiff's suffering three strokes impaired his ability to pursue his legal rights); Arbas v. Nicholson, 403 F.3d 1379, 1381 (Fed. Cir. 2005) (describing a stroke, head trauma, and a heart attack as possible ailments that would impair a person's ability to diligently pursue their legal rights).

Here, Brown argues that because he was hospitalized multiple times during his incarceration, he was unable to pursue his legal rights. Dkt. No. 45 at 6-11. The Court finds Brown's argument unavailing. First, Brown's most recent claim began to accrue on November 4, 2012—the date that Friedman allegedly issued a false misbehavior report. Compl. ¶ 21. His earliest claim began to accrue on February 7, 2012, when Friedman threatened him. Id. ¶ 10. Brown claims that he could not pursue these claims because he had knee replacement surgery on March 26, 2013 — nearly five months after the most recent claim accrued. Dkt. No. 45 at 6. Brown was then placed in the SHU, and hospitalized again from May 16, 2013 through June 21, 2013. Id. at 6-7. Brown claims that his legal papers were lost when he was transferred to Five Points C.F. on July 5, 2013 and claims that he kept "going back and forth either to the clinic, infirmary or an outside hospital[,]" but provides no explanation as to why he waited until October 16, 2015 to attempt to file his complaint. Id. at 7-9. Brown's chronological medical history fails to show "how [his] condition adversely affected [his] capacity to function generally or in relationship

-17-

to the pursuit of [his] rights[.]" Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000). Because Brown has not shown that his hospitalizations and surgeries impeded his ability to successfully file his federal complaint, he has not met his burden in proving that the statute of limitations should be equitably tolled. See Rhodes v. Sheahan, No. 9:13-CV-00057, 2016 WL 890081, at *8 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff failed to establish how his spinal surgery prevented him from filing his habeas petition in a timely manner).

Based on the foregoing, the Court finds that Brown has failed to meet his burden in showing that he is entitled to equitable tolling due to his medical condition.

### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for dismissal (Dkt. No. 34) pursuant to Fed. R. Civ. P. 12(c) of plaintiff Dennis Brown's complaint (Dkt. No. 1) be **GRANTED**; and it is further

**RECOMMENDED** that this case be **DISMISSED** in its entirety as to all claims and all defendants; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y

of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated:   February 28, 2017
         Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge